IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PARREN E. GREENE | * | |
|     Plaintiff, | | |
| v. | * | CIVIL ACTION NO. JKB-17-1752 |
| KEVIN KAMENETZ, *Baltimore County Executive*,[1] | * | |
| DEBORAH RICHARDSON, *Director of Baltimore County Dept. of Corrections,* | * | |
| CORRECTIONAL OFFICER SHAKIARA BLACK,[2] | * | |
| CORRECTIONAL OFFICER SOTERIA LOMAX, | * | |
| BALTIMORE COUNTY DEPT. OF CORRECTIONS | * | |
|     Defendants. | * | |

## MEMORANDUM OPINION

Parren E. Greene filed this Complaint during the time he was confined at the Baltimore County Detention Center as a pretrial detainee,[3] alleging that Officers Shakiara Black and Soteria

---

[1] Former Baltimore County Executive Keven Kamenetz was dismissed by Order dated December 4, 2017. ECF No. 7 at 1.

[2] The Clerk shall amend the docket to reflect the full spelling of the names of Officers Shakiara Black and Soteria Lomax.

[3] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." This Court will take judicial notice of facts from the State docket, which can be

Lomax each violated his Due Process and Equal Protection rights by conducting three separate disciplinary hearings that were not fair or impartial and resulted in sanctions requiring him to spend more than six months in restrictive housing. Compl., ECF No. 1;[4] Amended Compl., ECF No. 5; Suppl. Compl., ECF No. 10.[5] Defendant Baltimore County Department of Corrections ("BCDC"), filed a Motion to Dismiss. ECF 11. Thereafter, BCDC Director Deborah Richardson and Officers Black and Lomax filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF 15.[6]

The case is briefed and ready for disposition. No hearing is necessary to resolve the issues. *See* Local Rule 105.6 (D. Md. 2018). For reasons to follow, Defendant BCDC shall be dismissed from this case and summary judgment shall be entered in favor of Defendants Richardson, Black, and Lomax.

## FACTUAL BACKGROUND

Greene alleges the BCDC disciplinary procedure is unfair because hearing officers are chosen from among the ranks of line officers and the procedure does not comply with the Code of Maryland (COMAR), because it subjects detainees to disciplinary proceedings in front of a

---

viewed electronically at
http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=03K16006330&loc=55&detailLoc=K, and reveal that Greene was charged with armed robbery and related changes in November 2016, pleaded guilty to armed robbery on September 26, 2018, and is scheduled for sentencing on January 4, 2019.

[4] Pagination in this Memorandum Opinion reflects that assigned by the Court's electronic docket.

[5] None of these pleadings is verified.

[6] Consonant with the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Greene was notified in writing on April 19, 2018, and May 21, 2018, that Defendants' motions had been filed and Greene was entitled to file an opposition with supporting materials. ECF Nos. 13, 16. Greene has opted not to respond.

hearing officer who is not a "detached or neutral magistrate." ECF No. 1 at 2. Greene seeks money damages and an immediate return to general population housing. *Id.* at 3.

The uncontroverted facts that give rise to this lawsuit follow. In the early morning hours of February 18, 2017, Officer J. Jones observed Greene assaulting detainee Williams. Jones wrote an incident report and charged Greene with assault and for fighting/excessive horseplay. ECF No. 15-5 at 1-2. Greene acknowledged receipt of the charges placed against him by his signature. *Id.* at 2. On February 22, 2017, Officer Black conducted a disciplinary hearing for Greene regarding the incident. Greene refused to appear for the hearing. *Id.* Black, who was not involved in the incident, entered a not guilty plea on Greene's behalf. *Id.*; Black Aff., ECF No. 15-2, ¶¶ 11, 16. Black found Greene guilty of assaulting an inmate and not guilty of fighting/excessive horseplay based on Jones's incident report and imposed sanctions of 30 days of restrictive housing consecutive to restrictive housing sanctions imposed for previous misconduct.

Undeterred after receiving a disciplinary action for misconduct, Greene chose to interfere with an inmate count taking place on June 2, 2017. When warned by Sergeant Amaefule that Greene would be charged for non-compliance, Greene told Amaefule that "he (Mr. Greene) would fuck him (Sergeant Amaefule) up." Amaefule and Officer Warren wrote an incident report charging Greene with interfering with correctional staff, threatening bodily harm, failing to obey the order of a correctional officer, and failing to cooperate with the count or lock-in. ECF No. 15-7 at 1. Greene refused to acknowledge receiving the charges. *Id.* at 1. On June 5, 2017, Lomax commenced a disciplinary hearing, which Greene refused to attend. *Id.* at 2. Lomax, who was not involved in the incident, entered a not guilty plea for Mr. Greene and proceeded with the hearing. ECF No. 15-3, Lomax Aff., ¶¶ 11, 16. Officer Lomax reviewed

3

the statements and observations recorded by Officer Warren and Sergeant Amaefule in Incident Log No. 346014 and found them to be credible. Lomax Aff. ¶ 17. Based on statements of the officers and Greene's prior admission that he refused to obey because he had not received toenail clippers the day before, Lomax found Greene guilty of all charges and imposed 25 days of restrictive housing to run consecutive to prior restrictive housing imposed on Greene. *Id.*, ¶¶ 18-20.

Greene incurred a third disciplinary notice based on an incident report when on June 11, 2017, Officer Harrell observed Greene and fellow inmate Fisher fighting and wrote an incident report charging Greene with assault on another inmate, failure to obey the order of a correctional officer, and fighting/excessive horseplay. ECF No. 15-8 at 1. Greene acknowledged receiving the charges by his signature on June 11, 2017 (*id.* at 2), and on June 13, 2017 requested a postponement of his disciplinary hearing to identify and summon an inmate witness whose name he could not remember. *Id.* The request was granted and on June 14, 2017, Lomax commenced a hearing. Greene was present and pleaded guilty to fighting or excessive horseplay and not guilty to the other charges. ECF No. 15-3, Lomax Aff., ¶ 25. Greene defended his actions by stating that "[t]o assault someone is when they don't fight back. As far as failure to obey, no lights were flickered that we could see in the cell. I can't assault anyone who was fighting back. All she [Harrell] saw was him running out the cell." ECF No. 15-8 at 2. Greene submitted written questions for the witness, later identified as inmate Dargan, whom he had requested to testify as a witness at the hearing. ECF No. 15-9. Out of Greene's presence, Lomax asked Dargan written questions proposed by Greene. Dargan stated that the fight between Greene and Fisher began in a cell out of Harrell's view and that Harrell did not flick the lights. ECF No. 15-9. Lomax then reviewed the incident log, determined Harrell's

4

statements credible, reviewed Greene's admission and Dargan's testimony, and found Green not guilty of assaulting an inmate, but guilty of failing to obey an order and fighting/excessive horseplay. ECF No. 15-9; ECF No. 15-3, Lomax Aff., ¶¶ 28, 30. Lomax imposed 30 days of restrictive housing to run consecutive with prior disciplinary actions imposed on Greene. ECF No. 15-8 at 2.

Defendants note that the Code of Maryland Regulations (COMAR) for State detention facilities does not require that a hearing officer be detached or neutral from the facility.[7] Defendants further state that BCDC's disciplinary procedure does not forbid a hearing officer employed by the facility to conduct a disciplinary hearing.[8]

**STANDARD OF REVIEW**

In reviewing the Complaint subject to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded allegations of the Complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkaril* 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short

---

[7] COMAR 12.02.27.07(H)(1) provides that the warden, or a designee, may designate facility staff to act as a hearing officer. The regulation further states:

> (2) A facility hearing officer conducting a hearing shall be empowered with the duties and responsibilities of a hearing officer as enumerated by this chapter.
>   (a) The facility hearing officer may conduct a hearing in the absence of a hearing officer or when a hearing officer is conducting facility hearings.
>   (b) The facility hearing officer shall conduct a hearing in accordance with the procedures of this chapter.

The hearing officer may determine whether the inmate has committed the rule violation and the sanctions to be imposed, COMAR 12.02.27.07.B(4), and is defined as an "impartial, non-advocate, fact-finder who presides over a hearing." COMAR 12.02.27.02(18).

[8] Defendants provide a relevant section of the Inmate Rules and Regulations Handbook stating that hearings are conducted by "impartial Disciplinary Hearing Officers." ECF No. 15-10 at 35.

5

and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States has explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court is mindful that Greene is self-represented and the submissions of a pro se litigant must be construed liberally. *See Carter v. Fleming*, 879 F.3d, 32, 137 (4th Cir. 2018); *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint").

BCDC's motion is styled as a motion to dismiss and will be examined solely within this context. The Motion submitted by Defendants Richardson, Black, and Lomax is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, the Court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261

(stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs.*

*Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, Civ. No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on

the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary and the "nonmoving party's objections before the district court "served as the functional equivalent of an affidavit." *Id.* at 244-45 (internal citations omitted).

Greene has not filed an affidavit under Rule 56(d), nor has he objected to Defendants' dispositive motion. Given this failure, the Court is satisfied that it is appropriate to address the motion submitted by the individual Defendants as one for summary judgment. Summary judgment is governed by Rule 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court

should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because Greene is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## DISCUSSION

Defendant BCDC argues that it is not a legal entity amenable to suit. Defendants Richardson, Black, and Lomax contend that Greene's disciplinary hearings comported with due process and equal protection.

### I.     Claims Against BCDC

BCDC argues that it is not a legal entity subject to suit in its own name. Substantive state law determines whether an entity possesses the legal capacity to be sued. *See Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616, 617-18 (4th Cir. 1976). BCDC is a department within Baltimore County's administrative structure and consequently not subject to suit in its own name. *See Farmer v. Baltimore Cty. Dep't of Corrs.*, Civil Case Nos. CCB-11-2126, CCB-11-2143, 2012 WL 3155650 *3 (D. Md. July 31, 2012); *Cty. Council for Montgomery County v. Supervisor of Assessments of Montgomery County*, 274 Md. 116, 123, 332 A.2d 897 (1975) ("County Council" is not a separate legal entity that can sue or be sued); *Ashburn v. Anne Arundel County*, 306 Md. 617, 620, 510 A.2d 1078 (1986) (observing that the circuit court found

"Anne Arundel County Police Department was not a separate legal entity" subject to suit). Therefore, the Court will grant BCDC's motion to dismiss (ECF No. 11).

## II. Claims Against Director Richardson and Officers Black and Lomax

The Motion to Dismiss or, in the Alternative, for Summary Judgment was filed with supporting evidence including affidavits from Defendants Black and Lomax, the Baltimore County Department of Corrections Institutional Operations Disciplinary Process manual, the Guidelines for Inmate Disciplinary Procedure, the Inmate and Regulations Handbook, the reports relevant to Greene's three disciplinary hearings, and relevant portions of COMAR. ECF No. 15-2 through ECF No. 15-12.

Defendants argue that Greene was provided the level of due process and equal protection to be afforded a pretrial detainee. Black and Lomax assert they completed additional training relevant to their service as hearing officers and state that neither was involved in the events that resulted in the rules violation charges placed against Greene. ECF No. 15-2, Black Aff'd, ¶¶ 8-11; ECF No. 15-3, Lomax Aff'd, ¶¶ 8-11, 23-25. They maintain that Director Richardson is authorized by COMAR 12.02.27.07H (1) to appoint a disciplinary hearing officer (the warden, or a designee, may designate facility staff to act as a hearing officer), and they were chosen. Defendants note there is no prohibition against hearing officers being employees of the facility and suggest that COMAR seems to anticipate that facility staff may serve as hearing officers. ECF No. 15-11 at 4.

On two of the three occasions relevant here, Greene refused to participate in his hearings.[9] ECF No. 15-5 at 2; ECF No. 15-7 at 2. On another occasion, Greene pleaded guilty

---

[9] The Court notes that the BCDC Inmate Rules and Procedures Handbook states, "Inmates charged will be present, unless the inmate presents a threat to security." ECF 15-10 at 2, § C.2. The circumstances surrounding Greene's refusal to attend the hearings or whether his refusal to

12

to one count of misconduct. ECF No. 15-8 at 2. Each time, the hearing officer prepared written findings holding Greene responsible for misconduct and recommended his placement on restricted housing. While inmates on restrictive housing have various privileges such as access to the telephone, television, general visitation, group recreation, commissary, and program participation curtailed or suspended (ECF No. 15-10 at 2, ¶ A.4; ECF No. 15-10 at 2, ¶ F), record evidence shows that constitutionally protected rights such as access to the courts, legal material, and legal counsel are not denied to those held on restrictive housing. ECF No. 15-10 at 2, ¶ E.

### A. Equal Protection Claim

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To succeed on an equal protection claim, a petitioner "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Washington v. Davis*, 426 U.S. 229, 239-42 (1976); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Greene provides no factual predicate to support an equal protection claim. Specifically, he does not allege, much less show that he was treated differently from other similarly-situated inmates. He has not identified any inmate found guilty of similar facility rule offenses who was sanctioned differently. Nowhere does Greene allege or demonstrate purposeful disparate treatment resulting from an impermissible discriminatory animus. The Complaint contains insufficient facts to state a plausible equal protection claim to survive a motion to dismiss. Accordingly, this claim will be dismissed.

---

sign for receipt of the hearing officers' written findings are not in the record. Greene, however, provides no Complaint allegation or other evidence suggesting that his absence from the hearings was attributable to misconduct on the part of corrections staff, nor does he suggest that he was denied written findings of the hearing officers.

## A. Due Process

Because pretrial detainees have not been convicted of the crimes with which they are charged, they retain a liberty interest in freedom from "punishment," even while they are detained to ensure their presence at trial. *Dilworth v. Adams*, 841 F.3d 246, 251 (4th. Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979)). Though "[l]oss of freedom of choice and privacy are inherent incidents" of pretrial detention, discrete "punitive measures" imposed during pretrial detention intrude on a protected liberty interest. *Dilworth* 841 F.3d at 251 (citing *Bell*, 441 U.S. 537); *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005) ("Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment[.]"); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (finding pretrial detainees are protected with respect to "any form of 'punishment'").

In *Dilworth*, the United States Court of Appeals for the Fourth Circuit held that a pretrial detainee was entitled to procedural due process before being subjected to disciplinary segregation as punishment for two disciplinary infractions. 841 F.3d at 251. Dilworth spent 85 days in disciplinary segregation and "was not afforded a hearing in connection with either of his placements in disciplinary segregation." *Id.* at 248. The Fourth Circuit emphasized that Dilworth had not been convicted of a crime when he was segregated. *Id.* Further, the Fourth Circuit determined that Dilworth's placement in disciplinary segregation implicated a protected liberty interest and warranted procedural safeguards. *Id.* at 251.

As the Fourth Circuit explained in *Dilworth*, 841 F.3d at 253, the elements of due process in prison disciplinary proceedings were established by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). In *Wolff*, the Supreme Court recognized the need to balance inmates' due process interests with the legitimate security concerns and goals of the correctional

14

institution. *Dilworth*, 841 U.S. 253 (quoting *Wolff*, 418 U.S at 556-63). *Wolff* requires that inmates be provided the opportunity for a hearing at which they may call witnesses and present evidence unless to do so "would present an undue hazard." *Wolff*, 418 U.S. 557-58. An inmate also is entitled to written notice of the alleged disciplinary violation at least 24 hours before the hearing and, after the hearing, to a written statement describing the reasons for the disciplinary action taken. *Id.* at 563-65.

Greene has failed to show a violation of due process attributable to the actions taken by Director Richardson in selecting Officers Black and Lomax to act as hearing officers. Arguably, the three incidents that resulted in Greene's placement on restrictive housing constituted actions that triggered the due process protections set forth in *Dilworth*. Greene failed, however, to provide an opposition response or delineate facts in his Complaint sufficient to show how his due process rights under *Dilworth* were violated with regard to the manner in which the hearings were conducted and the findings were presented to him. Greene received certain protections by dint of state law, BCDC disciplinary procedure directives, and the Inmate Handbook, which are in accord with *Bell* and *Dilworth*. Nothing more is constitutionally required.

Defendant Baltimore County Department of Corrections is dismissed. Defendants Richardson, Black, and Lomax are entitled to summary judgment. A separate Order follows.

Date: 12/18/18

James K. Bredar
Chief Judge